Judge Owsley
delivered the opinion.
' This was a bill in equity exhibited by Fowler in the circuit court, for the purpose of obtaining title to Lot ⅞, in the town of Lexington, the equity whereof he asserts through James M’Btide, dec’d. who, it is alleged, was entitled to a conveyance as an original settler in the town.
That M’Rride, at one time, was entitled to the lot, is not denied by the defendants; and it is admitted, that Fowler is entitled to any relief which could, now, be granted tq M’Bride, if he were still living, and complainant in the present contest; but they allege, that in consequence of his failing to comply with the orders, and resolutions, made by the board of trustees, in about 1782, or 178S, M’Bru'e forfeited his right to the lot, and shortly, thereafter, the trustees conveyed the lot to M’Dermid, under whom the defendants, other than the trustees, claim, alleging, themselves to be the purchasers for a valuable consideration without notice of the claim of M’Bride; and all the defend? . ants, insist and rely upon the staleness of the demand asserted by Fowler, and a continued adverse possession in M%Dermid and those claiming under him for upwards- of" thirty years.
*250 On a final hearing, the circuit court pronounced a decrefe dismissing Fowler’s bill with cost.
Tbe correctness of that decree, is now presented for the rfevision of (his court, by Fowler.
In deciding on Fowler’s right to relief against the defendants claiming under M’Dermid, the only question to which tbe attention of this court need be directed, involves an en-quiry into the fact, of á deed having been executed by tbe trustees to M’Dermid. If Such a deed were executed, aS the defendants claiming tinder M’Dermid, are admitted to be purchasers under him, and there is no evidence of their having had notice of tbe claim Of M’Bride, it is perfectly olear, that whatever equity that claim might confer on Fowler as against the trustees, it cannot authorise a decree against the other defendants.
With respect to the fact of a deed having been executed to M’Dermid, by the trustees, the evidence is not as explicit Os might be desired. It is, however, we apprehend, sufficient, to warrant the inference, that such a deed wa* given. There is some contrariety of evidence, as to the precise timfe When M’Dermid obtained possession of the lot; hitt it is admitted by the parties, that ih 1185 he was in possession, claiming it as his own, and that he, and those claiming under him, have continued in the undisputed possession from that time, until the commencement of the present contest. It is proven, that M’Bride, in 1785, resided in the vicinity 6f Lexington, and continued to live in that neighborhood, without asserting claim to the lot, till his death, in 1790 or 1791; and that, in 1795, Fowler obtained from the representatives of M’Bride, the deed under which he now asserts claim, but there is no evidence of his ever having asserted any claim, until 181G, when his present hill was filed. It is also proven, that before 1185, it being supposed that M’Bride had forfeited his claim to the lot, a certain Brab-son and Collins, put up each their claim, and Collins, proves, that his claim was approved by the trustees, and that he, thereafter, sold it to M’Dermid, and gave him an order to the trustees for a deed; and it is proven by Graham, that having purchased Brabson’s claim, he sold and transferred it to M’Dermid, in 1785.
There is no deed, or copy of a deed from any public record, purporting to have been made by the trustees te M’Dermid, exhibited in the cause; but we are bound to know, from (he legislative enactments of the country, that *251 the office of the county court of Fayette, where the deed, if made, would most probably bare been recorded, has been consumed by fire. A transcript from the records of the clerk’s office of this court, .containing memorials of deeds, purporting to have been executed by trustees of Lexington to M’Dermid, is exhibited in the record; but from those memorials, it does not distinctly appear, that any deed has ever been executed by the trustees to M’Der-mid for lot A, — Qpe of those memorials purports to be for lot y?, and it is proven in the cause, that M’Dermid never pul up any claim to lot p, but that lot is shewn, to have been conveyed by the trustees to a certain Masterson, in 1783, about two years before the date of the deed to M’Der-mid, as recited in the memorial.
From the evidence thus detailed, this court can enterx tain nn reasonable doubt, but that a deed was executed by the trustees in 1755, to M’Dermid for the lot A, uo.w ⅛ contest.
It would be indulging no great latitude of presumption, to infer the execution of such a deed, from the length of lime M’Dermid, and those claiming under him, have held the undisturbed possession of the lot. Twenty years undisturbed possession lias been held sufficient to raise such a presumption, (Peak, Ev. 326); and in the present case, M’-Dermid is not only admitted to have held the possession of the lot, claiming it as his own, in 1785, but that possession appears to have been continued from that time,'by him and those claiming under him, under circumstances, conducing, rather, to fortify than weaken the presumption resulting, la ordinary cases, from lapse of time. The only circumstance seeming to nriilitate against the presumption, is, that of the memorials of deeds taken from the records of the clerk’s office of this court. But when it is recollected, that the Jot p, had been conveyed by the trustees to Masterson about two years before the date of the deed recited in the memorial; that M’Dermid, if not residing on the lot A, at the time, received the possession thereof, shortly after, astd ne-Ter put up any claim to lot,/); and that the lot, A, has continued in the undisturbed possession of M’Dermiid and those claiming under him, from that time, to the commencement of this suit — when these facts are recollected, and the peculiar form of the letter described in the memorial is adverted to, it becomes highly probable, that thp lot, ⅞, was conveyed by the deed referred to in the memorial, and that *252 the Form of the letter bas undergone a slight change bj neg-l*gencei either in recording or copying,
If, then, we are córreet in supposing that a deed was made by the trustees to M’Dermid, it follows, that no relief ought to be given to Fowler against the defendants who bold un» der him as purchasers for a valuable consideration, without notice, and consequently a3 to them the bill was properly dismissed.
We are also of opinion, that the bill was correctly dismissed as to the trustees. For, admitting that Fowler has shewn a valid right to the lot, when it was conveyed by the trustees to M’Dermid, after that conveyance was made, the only remedy to which Fowler could be entitled, was a pecuniary compensation against the trustees; and as the conveyance must be presumed to have been made by the trustees in 1785, the lapse of time, since then, forms an insuperable bar, both at law and equity, to the demand of Fowler.
The decree must be affirmed with cost.